KENNETH TURNER, Appellant, *v.* COUNTY OF CLINTON, Respondent.

Third Department, December 28, 1954.

*J. S. Carter* and *Armand A. Mancuso* for appellant.

*Thomas A. Robinson* for respondent.

FOSTER, P. J. Appeal from an order and judgment of nonsuit granted in a negligence action at the end of plaintiff's case at a Trial Term of the Supreme Court, Clinton County.

The evidence indicates that plaintiff attempted to cross a bridge over the Saranac River, connecting the Towns of Plattsburgh and Schuyler Falls in Clinton County, with a truck and load weighing at least over six tons. The truck went through the floor of the bridge and into the stream below, causing personal injuries to the plaintiff and damage to his truck. The accident happened on September 9, 1948, between eight and nine o'clock in the evening, and it could be found that it was dark at the time. Plaintiff came to the bridge from the north side and the highway approach was at a sharp right-angle turn. There were no lights on the bridge, and plaintiff testified that as he approached the bridge he saw no sign of any kind indicating a weight limit. The proof however rather indisputably shows that a sign had been placed on the north end of the structure and on the west side thereof, about seven feet from the surface of the highway, indicating that the bridge was safe for a four-ton load. This sign was twenty-four and one-half inches in length and eighteen and one-half inches high, with a painted white background and letters in black three and one-half to four inches high.

Plaintiff testified that as he drove onto the bridge his speed was less than ten miles an hour. The accident happened when he was about three quarters of the way across the bridge and had turned his vehicle to the left to avoid striking a pile of timbers on the bridge. According to the testimony such timbers were approximately twenty to twenty-five feet in length and their number was estimated as between sixty and seventy. They were piled there for use in repairing the bridge. There was some testimony to the effect that some of the planks on the floor of the bridge were rotten and the highway department of the respondent county had been replacing them.

The trial court directed a nonsuit on two grounds: (1) that plaintiff failed to prove the cause of action alleged in his complaint, and (2) that he was guilty of contributory negligence.

The complaint alleged generally that the bridge was unsafe for vehicular traffic, and charged the defendant county with a statutory failure to post the approaches thereto with warning signs, and also with a failure to place adequate warning signs on the bridge itself. The evidence as we read it did not show that the bridge was unsafe for all vehicular traffic but there was proof that the safe limit of weight it could carry was four tons. It is

clear that plaintiff's truck and load exceeded that safety limit by over two tons.

The bridge had been part of a town highway system but it is undisputed that before the accident in question it had been taken over by the respondent county pursuant to the provisions of the Highway Law (§ 231, subd. 10). Thereafter the bridge in question became a part of the county highway system, or at least wholly under the jurisdiction of the defendant county so far as repair and maintenance were concerned. Section 231 of the Highway Law places upon the county superintendent of highways the duty of inspecting any bridge located either on a county or town highway which is reported unsafe for public use by a town superintendent or five residents of a town where the bridge is located. Subdivision 3 of the same statute provides as follows: " If such bridge is found to be safe for public use and travel under restricted loads or weight of animals, the county superintendent shall determine the total safe load or weight of animals which may be permitted to pass over such bridge * * * It shall thereupon be the duty of the town superintendent to post conspicuous notices on such bridge and also on the approaches thereto relating to the weight of load permitted on and speed of vehicles permitted over such bridge ".

Presumably the paragraphs quoted refer to town roads. It hardly seems likely that the Legislature intended to require town superintendents of highways to post county bridges. Nevertheless it is these subdivisions of the statute upon which appellant relies so far as statutory requirements for posting are concerned. Appellant argues that when the respondent county took over the bridge it also took over the duty of posting that formerly was imposed upon the town superintendent — that is not only to post the bridge itself but also its approaches.

Respondent to the contrary relies on subdivisions 16 and 17 of section 14 of the Vehicle and Traffic Law.

" 16. A vehicle or a combination of vehicles shall not be operated or moved over or through any bridge, viaduct or other structure on any highway if the weight of such vehicle, or combination of vehicles and load, is greater than the capacity of the structure or exceeds the height of the posted clearance as shown by a sign on the right side of or overhead on the structure.

" 17. It shall be the duty of the superintendent of public works to cause signs to be erected at both ends on the right side of or overhead on all bridges or viaducts under his jurisdiction, stating the capacity in tons of two thousand pounds which the bridge or viaduct will safely carry. For all other bridges or viaducts it

shall be the duty of the authority having jurisdiction to place similar signs. Upon bridges of sufficient strength to carry safely the legal loads permissible by this section, no such signs shall be required."

Respondent county argues that under the last-quoted subdivision it was obliged only to post the bridge itself and not its approaches. If this argument is valid, and apparently the language of the statutes support it, a rather curious and anomalous result is reached. The approaches to a town bridge unsafe for maximum legal loads, as well as the bridge itself, must be posted under the Highway Law, but when the same bridge in the same condition is taken over by a county only the bridge itself need be posted under the Vehicle and Traffic Law. However courts must ordinarily take statutes as they find them even though some provisions may seem anomalous. We suppose it is not beyond the bounds of reason to prescribe different requirements as to posting warning signs where the responsibility for maintenance rests in different hands. Thus the State Superintendent of Public Works is not required by statute to post the approaches to bridges on the State highway system (Highway Law, § 230, subd. 1; Vehicle & Traffic Law, § 14, subds. 16, 17). We reach the conclusion therefore that the trial court was correct in determining that no statutory duty rested upon the respondent county in this case to post warning signs on the approaches to the bridge in question. But this conclusion does not in our opinion end the matter.

It will be noted that the subdivisions of the Vehicle and Traffic Law which we have quoted, and which apparently prescribe the duty of the county, do not specify the size of signs, their context or the *precise location* where they are to be placed on any bridge in order to indicate its safe weight-carrying capacity. These matters are necessarily left open to the judgment of those whose duty it is to see that the signs are placed. The obvious purpose of such signs is to give fair warning to the traveling public of possible load danger ahead, otherwise a driver could rightfully assume a bridge was safe for the maximum load permitted on highways, which is far in excess of the weight involved in this case (Vehicle & Traffic Law, § 14, subds. 9, 11). A sign that is adequate in size and placement to carry out this purpose in one instance may be so inadequate in another situation as to lead to an inference of negligence.

In this case the obligation of the respondent county, acting through its county superintendent of highways, was not discharged by merely placing *a sign of any kind or character* on

the north end of the bridge. Quite evidently the intent of the statute was to require an adequate sign in all particulars, and indeed this duty would have rested on the county irrespective of statute. Hence other factors had to be considered, i.e., lighting conditions, the fact that the approach to the bridge from the north side involved a sharp right-angle turn, the size of the sign and its placement, and any other factors that bore upon the question of whether the sign was an adequate warning to those travelers who are exercising reasonable care in their approach to the bridge. The trial court evidently determined that the sign in question was adequate as a matter of law. We are constrained to the belief that this issue was one of fact and should have been submitted to a jury.

The trial court also found plaintiff guilty of contributory negligence as a matter of law. We are by no means suggesting that his conduct could not be adjudged negligent as a matter of fact, even though it be found that the bridge was improperly posted, but in our opinion this issue was also for a jury to determine. The presence of the pile of timber on the floor of the bridge on the night of the accident, which required plaintiff to turn his vehicle to the left, neither adds to nor subtracts from the issues of negligence and contributory negligence as we view them.

In view of the foregoing, and applying the familiar rule that in considering a nonsuit every favorable inference must be drawn for the plaintiff's case, the order and judgment should be reversed and a new trial directed, with costs to abide the event.

BERGAN, HALPERN, IMRIE and ZELLER, JJ., concur.

Order and judgment reversed, on the law and facts, and new trial directed, with costs to abide the event. [See *post*, p. 987.]